AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

FILED
U.S. District Court
District of Kansas
SEP 22 2014
Clerk, U.S. District Court
By: _____ Deputy Clerk

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  ) Case No. 14-M-6239-01-KGG
This warrant applies to information associated with the Facebook user "tj.rogers.37"  )
that is stored at premises owned, maintained, controlled, or operated by Facebook, a  )
company headquartered at 151 University Avenue, Palo Alto, California, 94301.  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Northern____ District of ____California____ *(identify the person or describe property to be searched and give its location):*

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ____18____ U.S.C. § ____2251, 2252____, and the application is based on these facts: and also a violation of 18 U.S.C. 2422

☑ Continued on the attached sheet. (see attached affidavit of probable cause)

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Amy M. Kuhn, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/22/14

_____
*Judge's signature*

City and state: Wichita, KS    Kenneth G. Gale, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Affiant, AMY M. KUHN, being duly sworn, deposes and states:

## INTRODUCTION

1.   I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), Kansas City Division, Garden City Resident Agency (RA). I have been employed as a SA of the FBI since July 2008. I am presently assigned to work a variety of criminal matters, including, but not limited to, child pornography investigations. Before coming to the FBI, I was employed for almost two years as an Assistant County Attorney in Ford County, Kansas. During my time in Ford County, I handled felony and misdemeanor criminal cases. In addition, I worked with law enforcement preparing search warrants for Court approval as well as advised law enforcement on matters of probable cause. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

2.   I make this affidavit in support of an application for a search warrant for information associated with certain Facebook accounts that are stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered at 151 University Avenue, Palo Alto, California, 94301. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscribers or customers operating the sites. The information to be disclosed by Facebook is described in Attachment A, which will be searched by law enforcement for the information described in Attachment B.

3.  The statements in this affidavit are based in part on information provided by other FBI employees and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe evidence, fruits and instrumentalities of violations of: 18 U.S.C. 2422, Enticement of a Child; 18 U.S.C. 2251, Production of Child Pornography; 18 U.S.C. 2252, Distribution, Receipt and/or Possession of Child Pornography; are presently located on the computer systems in the control of Facebook.

## DETAILS OF INVESTIGATION

4.  Timmy Jo Rogers (white male, DOB 06/xx/1986) is a resident of McPherson, Kansas.

5.  Timmy Jo Rogers has a Facebook account under the name Tj Rogers, user ID tj.rogers.37. The account was registered on January 14, 2009.

6.  In March of 2014, one of Jessica Zager's friends suggested she look at the Facebook account of her ex-husband, Timmy Jo Rogers. Using information learned during their marriage, Zager signed onto Rogers's Facebook account without his knowledge or consent.

7.  Within the private messages saved in Rogers' Facebook account, Zager discovered sexual conversations with several young females, at least two of which were minors. Zager took screenshots of certain conversations that she found in Rogers' Facebook account. Because Zager was deployed with the military, she emailed the screenshots to her mother, Glenda Kail, who in turn contacted and provided the screenshots to law enforcement.

8.  Law enforcement, including Affiant, was unaware of Zager's activities until Zager and Kail contacted law enforcement with the screenshots.[1]

---

[1] *United States v. Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005) (To determine whether a private person's search becomes a Government search, the court examines (1) whether the Government knew of and acquiesced in

9.  Affiant has since reviewed the screenshots and spoken with Zager by telephone. The screenshots show Rogers communicating with at least two minor females, identified herein as 15 year old D.W. (DOB 10/xx/1998) and J.J. (DOB unknown, but referenced as 17 in chat on Feb 1, 2014). D.W. appears to live in or around McPherson, Kansas, while J.J. appears to live in Oklahoma.

10. Relating to D.W., a review of the screenshots shows Rogers knew D.W. was a minor. On February 24, 2014, Rogers comments on D.W.'s age, suggesting she report her ex-boyfriend to get him in trouble due to her underage status: "Press charges on him lol" "U don't even have to say that. Just tell a police officer yal had sex. U win." He goes on to say, "If it makes you feel better I'd holler at u......but in 3 years."

11. Further review of the screenshots shows, on March 8, 2014, Rogers tries to set up a meeting with D.W. to engage in sexual conduct, including sending her a map:

> Rogers: If u can get to Kelly n Washington
> D.W.: Idk where that is
> Rogers: If u can get to elite installation (map sent)
> D.W.: Where is that??
> Rogers: Look by your head on picture
> D.W.: I know but idk where that is
> Rogers: If u walk down Lincoln ull see it on side of road
> D.W.: Omg why not Kaps?? And how long??
> Rogers: Kaps they no u. I'll be a block behind the kaps. Give me 15min

12. The conversation indicates that Rogers drove to D.W.'s location, which Affiant believes was then in McPherson, Kansas, based on Rogers' residence, the map provided by Rogers, and the street names and businesses reflecting locations in McPherson, Kansas. D.W. was apparently unable to meet up with Rogers:

---

the intrusive conduct, and (2) whether the person searching intended to assist law enforcement efforts or to further his [or her] own ends.); *see also United States v. Jarrett*, 338 F.3d 339 (4th Cir. 2003) (Government did not know of and acquiesce in hacker's search of defendant's computer in a manner sufficient to transform the hacker into an agent of the government, as required for Fourth Amendment protections to apply to search.)

> D.W.: Hey I'm out side
> D.W.: And my battery is dieing  Hey I will at Kaps in a second behind Kaps be there I saw u in your car
> Rogers: I drove by seen u
> D.W.: I'm coming  Be right there okay  Hey I'm coming
> Rogers: Is this happening now
> D.W.: Yeah I Guess so  Yes  I'm coming now see you there.
> Rogers: So r u still itchy
> D.W.: Yes  Sorry it didn't happen
> Rogers: Do I get to itch it
> D.W.: Yes
> Rogers: So when do I get to see ur titties

13. The conversation continues with Rogers extolling his sexual prowess to the 15 year old minor, culminating in receiving a requested image of child pornography:

> Rogers: Time n place
> D.W.: Idk  I'm just really horny okay
> Rogers: I swear u give me an hour I'll change ur sex life
> …
>
> Rogers: Give me an hour of ur time lol
> D.W.: U really want to fuck me don't u??
> Rogers: ????
> D.W.: I just said something stupid…..
> Rogers: To who?
> D.W.: I just asked u if u really wanted to fuck me but
> Rogers: But what
> D.W.: Nothing it scares me that if we had it today and I was on my period OMG u know what Wouk h e happened
> Rogers: O well lol
> D.W.: I could have gotten prego
> Rogers: Rubber duh
> …
>
> Rogers: I'm very good ull cum before I do
> D.W.: Really??  How lo does it take for u to cum?  Long
> Rogers: O yes.  U gotta promise not to fall in love
> D.W.: With u?
> Rogers: Yep
> D.W.: Maybe I will develop a crush for u  Okay….
> Rogers: Thats fine but u can never mention me.  I can go for 8 hours.  Unless it's really good ull
> D.W.: Holey shit I will love that
> Rogers: I can pull out n bust a nut n go right back at it

> D.W.: Omg I'm fucking horney!!!!!!
> Rogers: I don't think ur interested
> D.W.: I am
> Rogers: Then send me a smiley titty picture
> D.W.: Omg I'm watching bad grandpa
> Rogers: Tonight then?
> D.W.: idk
> Rogers: We can play show n tell
> D.W.: What's that?
> Rogers: U show me Urs I'll show u mine
> D.W.: Not tonight
> Rogers: Fine
> D.W.: I'm sorry
> Rogers: Ya
> D.W.: I want to call u babe for some reason
> Rogers: U could if I had my pic
> D.W.: Okay (D.W. sent a close up image of her vagina at 9:04 p.m. to Rogers)
> D.W.: Haha just shaved earlier today tho to
> Rogers: I'd like to see that
> D.W.: I know you would
> Rogers: Lol

14. Relating to the other minor, J.J., on February 1, 2014, Rogers refers to J.J.'s age as a minor, saying "That'll get me in trouble" and "Yes it would lesbo [J.J.] ur 12". In the same conversation, he admits that "one time I tried to get with u," indicating a previous attempt to engage the minor in sexual activity. The conversation continues, and on March 2, 2014, Rogers tells J.J. that "I'd treat ya right" and "Well when you can leave I gotta spot for ya here."

## TECHNICAL BACKGROUND RELATING TO FACEBOOK

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http//www.facebook.com. Facebook allows its users to establish accounts with Facebook. And users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. When signing up for a Facebook account, the person must agree to Facebook's terms of service

titled "Statement of Rights and Responsibilities." Facebooks terms of service states, "You will not use Facebook to do anything unlawful, misleading, malicious or discriminatory."

16.     Facebook asks users to provide basic contact information to Facebook, either during the registration process or thereafter. The information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code) telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

### Sources of Information retained by Facebook

18.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events and birthdays. A user may place his or her "Friends" into various groups, such as "Close Friends" or

"Restricted" or other user-created nominations, in order to highlight or segregate those "Friends" communications.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments and links that will typically be visible to anyone who can view the user's profile.

20. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by the user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.

22. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

23. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

24. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

25. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase and a personalized message can be attached to each gift.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

28. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

29. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact the user viewed the profile, and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account activation.

### Information to be provided by Facebook

32. Generally, when served with a search warrant for electronic communications, the electronic communications service provider (ECSP), such as Facebook, will send the contents of the specified account(s) to the investigation agency, usually on a CD, DVD or via email, for the

investigator to review. The ECSP can copy the contents of the entire account because that is within their expertise. Though the ECSP affirms that the records relate to the specified email account, the provider does not and will not undertake the examination of the contents of an account to make a determination as to what is relevant or irrelevant to the investigation.

33. Generally, and in this case particularly, the provider is not familiar with the investigation and is not in a position to identify the victim(s) or subject(s) of the investigation.

34. The provider is neither qualified nor trained to search the account information as would a law enforcement officer. Only a trained agent, familiar with the statutory violations and facts of the case, can determine what items should be or should not be seized. For these reasons, you Affiant requests the provider disclose the records listed in Section 1 of Attachment B, for the account(s) listed in Attachment A.

35. From Affiant's training and experience, Affiant knows that individuals who have a sexual interest in children tend to cultivate that interest over time. The screenshots captured by Zager show the conversation with J.J. occurring on February 1, 2014, but the content would suggest an on-going relationship that pre-dates February 1, 2014. The conversations with D.W. also appear to be part of an on-going relationship.

36. Further, from Affiant's training and experience, Affiant knows that individuals who use the internet to engage children in sexual conversation tend to engage multiple children at one time, trying to find a minor who will be receptive and compliant for sexual exploitation. Because the nature of this criminal investigation involves the online enticement of a child and child pornography, as well as communications with more than one minor, Affiant believes the account is likely to contain evidence of similar conduct, or attempts at such conduct, with other minors.

37. Additionally, because the account itself is being used to facilitate the crimes described herein, Affiant believes that the account may be seized as an instrumentality of the crime, in its entirety, similar to a computer, for examination similar to a computer.

38. Affiant believes such evidence may be found in a variety of locations, including but not limited to: friends lists, groups, status updates, wall posts, comments, events, birthdays, photos/videos, tags, private messages, notes/blogs, hyperlinks, gifts, pokes, classified ads, pending friend requests, and rejected friend requests. For these reasons, the law enforcement investigator must be allowed to review all the contents of the account, for the evidence listed in Section 2 of Attachment B.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(C)(1)(A), using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

## CONCLUSION

40. Based on the aforementioned factual information and my training and experience, there is probable cause to believe on the computer systems in the control of Facebook there exists evidence of crimes, to wit: 18 U.S.C. 2422, Enticement of a Child; 18 U.S.C. 2251, Production of Child Pornography; and 18 U.S.C. 2252, Distribution, Receipt and/or Possession of Child Pornography. Accordingly, a search warrant is requested.

41. This Court has jurisdiction to issue the request warrant because it is "a court of competent

jurisdiction" as defined by 18 U.S.C 2711, 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(C)(1)(A). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated."

42. Pursuant to 18 U.S.C. 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

_____
Amy M. Kuhn
Special Agent
Federal Bureau of Investigation

Sworn and Subscribed before me on this 22nd day of September, 2014

_____
The Honorable Kenneth G. Gale
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Facebook user:

**tj.rogers.37**

that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered at 151 University Avenue, Palo Alto, California, 94301.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Facebook**

To the extent the information described in Attachment A is within the possession, custody, or control of Facebook, Facebook is required to disclose the following information to the government for the user ID listed in Attachment A, from the date of creation until the present:

  (a) All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

  (b) All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them and any exif/metadata information associated with the photos.

  (c) All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items: notes: wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

  (d) All other communications and messages made or received by the user, including all private messages and pending "Friend" requests.

  (e) All IP logs, including all records of the IP addresses that logged into the account and intra-session IP addresses.

(f) All information about the user's access and use of Facebook Marketplace.

(g) The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number).

(h) All privacy settings and other account settings.

(i) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information, described above in Section I, that constitutes fruits evidence and instrumentalities of Enticement of a Child (a violation of 18 U.S.C. 2422), Production of Child Pornography (a violation of 18 U.S.C. 2251), or Distribution/Receipt/Possession of Child Pornography (a violation of 18 U.S.C. 2252), involving the user ID **tj.rogers.37** (identified in Attachment A). Such information may include:

(a) Records relating to or tending to show who created, used, communicated or controlled the **tj.rogers.37** account;

(b) Communications, in whatever form, between the user of **tj.rogers.37** and J.J.;

(c) Communications, in whatever form, between the user of **tj.rogers.37** and D.W.;

(d) Communications, in whatever form, between the user of **tj.rogers.37** and any person or entity, which relate to Enticement of a Child (a violation of 18 U.S.C. 2422), Production of Child Pornography (a violation of 18 U.S.C. 2251), or

Distribution/Receipt/Possession of Child Pornography (a violation of 18 U.S.C. 2252), or which otherwise tends to demonstrate a sexual interest in minors or the sexual exploitation of minors.

(e) Data or content which relates to Enticement of a Child (a violation of 18 U.S.C. 2422), Production of Child Pornography (a violation of 18 U.S.C. 2251), or Distribution/Receipt/Possession of Child Pornography (a violation of 18 U.S.C. 2252), or which otherwise tends to demonstrate a sexual interest in minors or the sexual exploitation of minors.